COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-07-383-CR

 

 

 

FRANCO ANDRE GOYZUETA                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

------------

 

FROM
COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

 

------------

 

OPINION

 

------------

 

I.  Introduction








Appellant Franco Andre
Goyzueta appeals his conviction for violation of  a permanent injunction under the Agang injunction statute.@  See TEX. PENAL CODE ANN. ' 71.021 (Vernon 2003); TEX. CIV. PRAC. & REM. CODE ANN. ' 125.065 (Vernon 2005). 
Goyzueta pleaded guilty to the offense, and pursuant to a plea bargain
agreement with the State, the trial court sentenced him to 300 days= confinement in the Wichita County Jail and a $4,000 fine.  In four issues, Goyzueta argues that both
section 71.021 of the Texas Penal Code and the permanent injunction=s curfew restriction are unconstitutionally vague and overbroad and
that section 125.065(a)(2) of the Texas Civil Practice and Remedies CodeCauthorizing entry of the permanent injunction underlying Goyzueta=s convictionCviolates the
separation of powers doctrine.  We will
affirm.

II.  Factual
and Procedural Background

On August 31, 2006, the State
filed its AOriginal
Petition for a Temporary Restraining Order, Temporary Injunction, and Permanent
Injunction.@  The petition named twenty-one members of the
street gang, Varrio Carnales (AVC@), including
Goyzueta, who had allegedly engaged in criminal activity.  The petition listed twenty-nine activities
the State sought to prohibit the named defendants from engaging in.  








Subsequently, the judge of
the 89th District Court of Wichita County, Texas entered an order for a
permanent injunction under section 125.065 of the Texas Civil Practice and
Remedies Code.  See TEX. CIV. PRAC. & REM. CODE ANN. ' 125.065.  The permanent
injunction contained a curfew restriction, prohibiting Goyzueta from Ariding about in a public place after 11 p.m. and before 6 a.m. of the
immediately following day.@[1] 

A week after the permanent
injunction was signed, at approximately 12:43 a.m., Officer Joe R. Esteves, a
Wichita Falls police officer, observed a car that failed to signal a left
turn.  Officer Esteves pulled the car
over and saw eighteen-year-old Goyzueta in the car.  According to Officer Esteves, he knew that
Goyzueta was a VC member and that he was under the gang injunction imposed by
the City of Wichita Falls.  Officer
Esteves consequently arrested Goyzueta for violating the court order enjoining
organized criminal activity, namely, Ariding about in a public place after 11 p.m. and before 6 a.m. of the
immediately following day.@ 








Goyzueta filed a motion to
dismiss the charge against him, raising several constitutional challenges to
the applicable statutes.  Goyzueta did
not file any other pretrial motions. 
After a hearing on his motion to dismiss, Goyzueta and the State reached
the above-mentioned plea bargain agreement. 
Goyzueta now appeals; his appeal is limited by the rules of appellate
procedure and by the trial court=s certification of his right to appeal, which restrict Goyzueta to
re-urging the issues he raised in his motion to dismiss.  See Tex.
R. App. P. 25.2(a)(2)(A).

III.  The Applicable Statutes

Section 125.065 of the civil
practice and remedies code outlines when a trial court can enter a temporary or
permanent order against a criminal street gang member. See TEX. CIV. PRAC. & REM. CODE ANN. ' 125.065.  The
statute provides:

(a)
If the court finds that a combination or criminal street gang constitutes a
public nuisance, the court may enter an order:

 

(1)
enjoining a defendant in the suit from engaging in the gang activities of the
combination or gang; and

 

(2)
imposing other reasonable requirements to prevent the combination or gang from
engaging in future gang activities.

 

(b)
If the court finds that a place is habitually used in a manner that constitutes
a public nuisance, the court may include in its order reasonable requirements
to prevent the use of the place for gang activity.

 

Id. 
Section 71.021 of the penal code
describes the offense of violation of a court order enjoining organized
criminal activity:

(a) A
person commits an offense if the person knowingly violates a temporary or
permanent order issued under Section 125.065(a) or (b), Civil Practice and
Remedies Code.

 








(b)
If conduct constitutes an offense under this section also constitutes an
offense under another section of this code, the actor may be prosecuted under
either section or under both sections.

 

(c) An offense under this
section is a Class A misdemeanor.

TEX. PENAL CODE ANN. ' 71.021.

IV.  Constitutionality of Penal Code Section
71.021

In his first and second
issues, Goyzueta argues that section 71.021 of the Texas Penal Code is
unconstitutionally vague and overbroad.[2]  The parties contend that this is a case of
first impression in Texas as no other court has addressed the constitutionality
of the gang injunction statute.  








The constitutionality of a
criminal statute is a question of law which we review de novo. Owens v.
State, 19 S.W.3d 480, 483 (Tex. App.CAmarillo 2000, no pet.); State v. Salinas, 982 S.W.2d 9, 10B11 (Tex. App.CHouston [1st
Dist.] 1997, pet. ref=d).  Whenever we are confronted with an attack
upon the constitutionality of  a statute,
we presume that the statute is valid and that the legislature has not acted
unreasonably or arbitrarily.  Rodriguez
v. State, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); Ex parte Dave,
220 S.W.3d 154, 156 (Tex. App.CFort Worth 2007, pet. ref=d), cert. denied, 128 S. Ct. 628 (2007).  The burden rests upon the individual who
challenges the statute to establish its unconstitutionality.  Rodriguez, 93 S.W.3d at 69; Ex
parte Dave, 220 S.W.3d at 156.  In
the absence of contrary evidence, we will presume that the legislature acted in
a constitutionally sound fashion.  Rodriguez,
93 S.W.3d at 69.  The statute must be
upheld if a reasonable construction can be ascertained that will render the
statute constitutional and carry out the legislative intent.  Shaffer v. State, 184 S.W.3d 353, 363
(Tex. App.CFort Worth
2006, pet. ref=d); see
also Ely v. State, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.]
1979).  

When an appellant challenges
a statute as both unconstitutionally overbroad and vague, we address the
overbreadth challenge first.  Village
of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494,
102 S. Ct. 1186, 1191 (1982); Duncantell v. State, 230 S.W.3d 835, 843
(Tex. App.CHouston
[14th Dist.] 2007, pet. ref=d); Byrum v. State, 762 S.W.2d 685, 687 (Tex. App.CHouston [14th Dist.] 1988, no pet.).








A.  Overbreadth Challenge

Goyzueta contends that
section 71.021 is unconstitutionally overbroad because the statute is
open-ended and allows the trial judge to determine what conduct is prohibited.[3]  








An overbreadth attack on a
statute is recognized only in the context of a First Amendment challenge.  United States v. Salerno, 481 U.S.
739, 107 S. Ct. 2095 (1987).  In
analyzing a facial overbreadth challenge to a law, we first determine if the
statute reaches a substantial amount of constitutionally protected conduct.  Village of Hoffman Estates, 455 U.S. at
494, 102 S. Ct. at 1191; State v. Holcombe, 145 S.W.3d 246, 250 (Tex.
App.CFort Worth 2004), aff=d, 187 S.W.3d 496 (Tex. Crim. App.), cert.
denied, 127 S. Ct. 176 (2006).  A
statute will not be invalidated under the overbreadth doctrine merely because
it is possible to imagine some unconstitutional applications.  Holcombe, 145 S.W.3d at 250 (citing Village
of Hoffman Estates, 455 U.S. at 494, 102 S. Ct. at 1191).  Rather, the wide-reaching effects of striking
down a statute on its face, at the request of one whose own conduct may be
punished despite the First Amendment, has caused the Supreme Court to recognize
that the Aoverbreadth
doctrine is >strong
medicine= and [courts should employ] it with hesitation, and then >only as a last resort.=@ New York v. Ferber, 458 U.S. 747, 769, 102 S. Ct. 3348, 3361
(1982); Garcia v. State, 212 S.W.3d 877, 888 (Tex. App.CAustin 2006, no pet.); Holcombe, 145 S.W.3d at 250.

The traditional rule is that Aa person to whom a statute may constitutionally be applied may not
challenge that statute on the ground that it may conceivably be applied
unconstitutionally to others in situations not before the Court.@  Los Angeles Police Dept. v.
United Reporting Publ=g Corp., 528 U.S. 32, 38, 120 S. Ct.
483, 488 (1999).  However, an exception
to this rule is a First Amendment overbreadth challenge.  Ferber, 458 U.S. at 769, 102 S. Ct. at
3361.  We will not strike down a statute
under the overbreadth doctrine unless there is Aa realistic danger that the statute itself will significantly
compromise recognized First Amendment protections of parties not before the
Court.@  Duncantell, 230 S.W.3d
at 843; Garcia, 212 S.W.3d at 888.








Goyzueta argues that section
71.021 is overbroad because it sweeps within its coverage speech or conduct
that is protected by the First Amendment. 
We cannot agree.  The purpose of
the overbreadth doctrine is to protect First Amendment freedom of expression
from laws written so broadly that the fear of punishment might discourage
others from taking advantage of that freedom. 
People v. Reynolds, 706 N.E.2d 49, 53B54 (Ill. App. Ct. 1999).  Here,
section 71.021 forbids a person from Aknowingly@ violating a
temporary or permanent order.  TEX. PENAL CODE ANN. ' 71.021.  As such, the
statute has a limited applicability because it applies only to individuals who
are subject to a temporary or permanent order and who knowingly violate that
order.  See Garcia, 212 S.W.3d at
888 (holding that section 25.07(a) of the penal code only applies to
individuals who are subject to a court order). 








A statute that forbids
intentional conduct is rarely subject to a facial overbreadth challenge.  See Sullivan, 986 S.W.2d at 712
(citing United States v. Nat=l Dairy Prods. Corp., 372 U.S.
29, 35, 83 S. Ct. 594, 599 (1963), which determined that an individual violates
section 21.11(a)(1) of the penal code if that person has the requisite intent,
and Screws v. United States, 325 U.S. 91, 101B03, 65 S. Ct. 1031, 1035B36 (1945)); Byrum, 762 S.W.2d at 687  (holding penal code sections 21.07(a)(3) and
21.01(2) are not overbroad because they forbid only knowing, intentional
acts).  Here, to violate section 71.021,
a person must violate a temporary or permanent injunction with the requisite
intent (i.e., knowingly).  

Goyzueta does not assert that
a particular word or phrase in the statute is overbroad nor does he describe
what specific protected First Amendment conduct or speech has been infringed
upon by the statute.  Instead, Goyzueta
merely complains that the statute itself is overbroad.  Accordingly, after examining section 71.021,
we cannot say that it restricts a substantial amount of constitutionally
protected conduct because the only conduct that it restricts is a knowing
violation of a court order.  See
Village of Hoffman Estates, 455 U.S. at 494, 102 S. Ct. at 1191.  Thus, we hold that the statute is not unconstitutionally
overbroad.  Having determined that
Goyzueta has failed to show that section 71.021 is overbroad, we overrule
Goyzueta=s second issue. 

B.  Void for Vagueness

In his first issue, Goyzueta
asserts that section 71.021 is facially unconstitutional because it fails to
provide adequate notice of what conduct is prohibited.  The State argues that section 71.021 is
constitutional because it clearly defines the prohibited conduct and it applies
only to a defendant=s knowingly
improper actions. 








A statute is void for
vagueness if it fails to define the criminal offense Awith sufficient definiteness that ordinary people can understand what
conduct is prohibited and in a manner that does not permit arbitrary and
discriminatory enforcement.@  Lawrence v. State, 240
S.W.3d 912, 915 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 2056
(2008) (quoting State v. Holcombe, 187 S.W.3d 496, 499 (Tex.
Crim. App.), cert. denied, 127 S. Ct. 176 (2006); Stevens v. State,
817 S.W.2d 800, 804 (Tex. App.CFort Worth 1991, pet. ref=d).  If, as in this case, a
statute does not substantially implicate constitutionally protected conduct or
speech, it is valid unless it is Aimpermissibly vague in all applications@ or as applied to the defendant. 
Lawrence, 240 S.W.3d at 915 (quoting Holcombe, 187 S.W.3d
at 499).  








A facial challenge to a
statute is the most difficult challenge to mount successfully because the
challenger must establish that no set of circumstances exists under which the
statute will be valid.  Shaffer,
184 S.W.3d at 364; see also Santikos v. State, 836 S.W.2d 631, 633 (Tex.
Crim. App.), cert. denied, 506 U.S. 999 (1992).  Because a statute may be valid as applied to
one set of facts and invalid as applied to another, it is incumbent upon the
appellant to first show that in its operation, the statute is unconstitutional
as to him in his situation; that it may be unconstitutional as to others is not
sufficient.  Shaffer, 184 S.W.3d
at 364; see also Santikos, 836 S.W.2d at 633.  That is, the reviewing court must look at
appellant=s conduct
alone, and then the court must examine whether
that conduct was clearly prohibited by the statute.  Cain v. State, 855 S.W.2d 714, 718
(Tex. Crim. App. 1993).  

In determining whether a
statute provides adequate guidelines for its enforcement, the reviewing court
may consider hypothetical situations to determine whether the guidelines are
adequate.  Margraves v. State, 34
S.W.3d 912, 921 (Tex. Crim. App. 2000). 
Initially, though, if there is no constitutional defect in the
application of the statute to a litigant, he does not have standing to argue
that it would be unconstitutional if applied to third parties in hypothetical
situations.  Santikos, 836 S.W.2d
at 633.

We will first examine whether
section 71.021 provides sufficient information so that a person of ordinary
intelligence would know that his conduct was prohibited.  See Lawrence, 240 S.W.3d at
915.  Goyzueta was charged with violating
section 71.021 by Ariding about
in a public place after 11 p.m. and before 6 a.m. of the immediately following
day.@  Although Goyzueta does not
make an Aas applied@ argument
per se regarding this issue, we will liberally construe his brief so as to
include an Aas applied@ challenge.  See  Tex.
R. App. P. 38.1(e), 38.9; Akins v. State, 202 S.W.3d 879, 892
(Tex. App.CFort Worth
2006, pet. ref=d). 








Goyzueta argues that the
statute is vague because a person of ordinary intelligence would not be able to
ascertain what conduct is prohibited.  We
cannot agree.  A statute must clearly
express the crime and the elements constituting it so that an ordinary person
can intelligently choose, in advance, what course it is lawful for him to
pursue.  Connally v. Gen. Constr. Co.,
269 U.S. 385, 391, 46 S. Ct. 126, 127 (1926). 
The plain language of the statute states that the prohibited conduct is
a violation of a temporary or permanent order issued under section 125.065 of
the civil practice and remedies code.  See
TEX. PENAL CODE ANN. ' 71.021. 

Thus, the language of the
statute would have given an individual in Goyzueta=s situation clear notice that violating the curfew restriction in the
permanent injunction would amount to a criminal offense.  Further, Goyzueta voluntarily agreed to the
permanent injunction.  See, e.g., Jackson
v. State, 76 S.W.3d 798, 802 (Tex. App.CCorpus Christi 2002, no pet.) (noting that if appellant agreed to
waive jury trial she cannot now complain about something she requested through
counsel).  Thus, Goyzueta not only knew
that he was subject to a permanent injunction, he also knew that the injunction
contained a curfew provision.  








Goyzueta acknowledged in his
brief that he was aware that other VC members were arrested for violating the
temporary injunction.  As such, we
determine that a person similarly situated, who agreed to the permanent
injunction and knew that arrest was a possibility for violating the injunction,
would understand that riding about in a public place at 12:43 a.m. is
prohibited.          Goyzueta further complains that the statute permits arbitrary
and discriminatory enforcement.  He
argues that the statute authorizes law enforcement officers to arrest an
injunction member if the officer reasonably believes that the individual is in
violation of a court order.  He contends
that the statute is unconstitutionally vague because it does not state, on its
face, what conduct is prohibited. 

We construe Goyzueta=s argument to complain that the statute was arbitrarily applied to him
because the arresting officer believed that he was under a permanent injunction
and that the injunction contained a curfew provision.  However, the arresting officer stated that he
knew that Goyzueta was a VC member and that he was under the gang
injunction.  The arresting officer
further stated that Goyzueta was in violation of the permanent injunction
because he was violating the curfew provision. 
Thus, Goyzueta cannot demonstrate that the officer acted arbitrarily
because the officer stated that he knew that Goyzueta was in violation of the
permanent injunction.  See Shaffer,
184 S.W.3d at 365 (holding that fact that officer recognized appellant did not
establish that officer acted arbitrarily). 









Additionally, Goyzueta cites
to Chicago v. Morales, a United States Supreme Court opinion, to
support his contention that the statute permits arbitrary and discriminatory
enforcement.  527 U.S. 41, 119 S. Ct.
1849 (1999).  In Morales, the City
of Chicago passed an ordinance that prohibited gang members from loitering in
public places.  Id. at 46B47, 119 S. Ct. at 1854.  The
ordinance provided in relevant part that 

[w]henever a police officer
observes a person whom he reasonably believes to be a criminal street gang
member loitering in any public place with one or more other persons, he shall
order all such persons to disperse and remove themselves from the area.  Any person who does not promptly obey such an
order is in violation of this section.

Id. at 47
n.2, 119 S. Ct. at 1854. 

In holding that the gang
loitering ordinance was unconstitutionally vague, the Court determined that the
ordinance did not provide law enforcement with any guidelines.  Id. at 60, 119 S. Ct. at 1861.  The ordinance, as written, authorized police
officers to order any individual, whether a gang member or not, to disperse if
the officer was not aware of their purpose. 
Id. at 63, 119 S. Ct. at 1862. 








However, unlike the ordinance
in Morales, section 71.021 does provide law enforcement officers with
guidelines and prevents arbitrary and discriminatory enforcement. Compare Tex.
Penal Code Ann. ' 71.021
with Morales, 527 U.S. at 47 n.2, 119 S. Ct. at 1854.  Section 71.021 authorizes an officer to
arrest an individual for violating a restriction in a temporary or permanent
order only if that individual is subject to the order.  Tex.
Penal Code Ann. ' 71.021.  As such, an officer cannot arrest someone
under the statute unless the officer knows that the individual is subject to a
court order and is violating a court-imposed restriction.  

Accordingly, we hold that
section 71.021 was not unconstitutional as applied to Goyzueta.[4]  Thus, Goyzueta cannot establish that the
statute is unconstitutional as applied to all convicted persons.  See Shaffer, 184 S.W.3d at 364. As
such, Goyzueta has failed to establish that under no set of circumstances would
the statute be valid.  See id. at
365.  We overrule Goyzueta=s first issue. 

V.  Section 125.065 and the Separation of Powers
Doctrine

In his third issue, Goyzueta
argues that section 125.065 of the civil practice and remedies code violates
the separation of powers doctrine because it in effect allows a trial judge to
create new criminal laws which when violated, create a class A
misdemeanor.  Goyzueta cites article two,
section one and article three, sections thirty and forty-three of the Texas
Constitution to support his contention. 
Article two, section one provides:








The
powers of the Government of the State of Texas shall be divided into three
distinct departments, each of which shall be confided to a separate body of
magistracy, to wit:  Those which are
Legislative to one; those which are Executive to another, and those which are
Judicial to another; and no person, or collection of persons, being of one of
these departments, shall exercise any power properly attached to either of the
others, except in the instances herein expressly permitted. 

 

TEX. CONST. art. II, ' 1.  The Separation of
Powers Clause is violated (1) when one branch of government assumes power more
properly attached to another branch or (2) when one branch unduly interferes
with another branch so that the other cannot effectively exercise its constitutionally
assigned powers.  In re D.W., 249
S.W.3d 625, 635 (Tex. App.CFort Worth 2008, pet. denied). 
The power to pass laws and to revise the criminal laws of Texas is
vested in the legislature.  TEX. CONST. art. III, '' 30, 43; Beasley
v. Molett, 95 S.W.3d 590, 608 (Tex. App.CBeaumont 2002, pet. denied).  

Initially, we recognize that
this is an issue of first impression because no other court has addressed the
issue of section 125.065 and the separation of powers doctrine.  Although not directly on point, we determine
that our sister courts= analyses
regarding the Civil Commitment of Sexually Violent Predators Act, chapter 841
of the Texas Health and Safety Code, and the separation of powers doctrine to
be persuasive.  








Section 841.082 of the Texas
Health and Safety Code states in relevant part that A[b]efore entering an order directing a person=s outpatient civil commitment, the judge shall impose on the person
requirements necessary to ensure the person=s compliance with treatment and supervision and to protect the
community. The requirements shall include: . . . (9) any other requirements
determined necessary by the judge.@   TEX. HEALTH & SAFETY CODE ANN. ' 841.082(a)(9) (Vernon Supp. 2008).  Section 841.085 provides that A[a] person commits an offense if, after having been adjudicated and
civilly committed as a sexually violent predator under this chapter, the person
violates a civil commitment requirement imposed under Section 841.082.@  Id. ' 841.085(a).  An offense
under section 841.085 is a third-degree felony. 
Id. ' 841.085(b).


In Beasley, the
Beaumont Court of Appeals examined sections 841.082 and 841.085 of the health
and safety code.  95 S.W.3d at 607B609.  In that case, the
defendant asserted that section 841.085 of the health and safety codeCwhen read in conjunction with section 841.082(9)Cviolated the separation of powers doctrine.  Id. 
Specifically, he claimed that the separation of powers doctrine was
violated because the trial judge had the authority to impose requirements the
judge deemed necessary, thus granting the judge the power to create a
third-degree felony.  Id.  








The Beaumont Court of Appeals
rejected Beasley=s argument,
holding that the legislature did not delegate its authority to create
third-degree felonies to the trial court. 
Id. at 609. The court reasoned that the legislature authorized
the trial courts to impose requirements necessary to ensure compliance with the
treatment and supervision of the committed person and to ensure the public=s safety.  Id.  The court reasoned that it is the legislature
that determined that violations of any of the statutory requirements, including
those necessary requirements specified by the judge, are third-degree
felonies.  Id.; see also In re
Commitment of Petersimes, 122 S.W.3d 370, 372 (Tex. App.CBeaumont 2003, pet. denied) (citing Beasley and denying
appellant=s separation
of powers argument); In re Commitment of Browning, 113 S.W.3d 851, 865
(Tex. App.CAustin 2003,
pet. denied) (holding that separation of powers doctrine not violated because
legislature determined that violation of requirements, including
judicially-imposed requirement, is an offense).








Here, the separation of
powers doctrine is not violated merely because the legislature authorized trial
courts to impose reasonable requirements not specifically listed in the statute
to prevent known gang members from engaging in criminal activities. See
TEX. CIV. PRAC. & REM. CODE ANN. ' 125.065(a)(2).  The
legislature has simply allowed trial courts to impose requirements to prevent a
gang member from engaging in future gang activities while retaining the
authority to impose a class A misdemeanor for violating a court-imposed
restriction.  Id.; Tex. Penal Code Ann. ' 71.021(c).  As such, we
hold that section 125.065 does not violate the separation of powers
doctrine.  Accordingly, we overrule
Goyzueta=s third issue.

VI.  Constitutionality
of Injunction Curfew Provision

In his final issue, Goyzueta
asserts that the injunction curfew provision that he was charged with violating
is unconstitutionally vague and overbroad. 
The State argues that Goyzueta failed to properly preserve error on this
issue because he is raising it for the first time on appeal.  We must agree.

To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez
v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). 








Here, the trial court=s certification of appeal specifically states that Goyzueta has the
right to appeal matters raised Aby written motion filed and ruled on before trial and not withdrawn or
waived.@  Goyzueta did not include an
issue regarding the constitutionality of the curfew provision in his motion to
dismiss.  Accordingly, we hold that
Goyzueta did not properly preserve this issue for our review.[5]  Thus, we overrule Goyzueta=s fourth issue.

VII.  Conclusion

Having overruled Goyzueta=s four issues, we affirm the trial court=s judgment.

SUE WALKER

JUSTICE

 

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED: 
August 26, 2008











[1]The
record before us regarding Goyzeta=s criminal conviction, does
not contain a copy of the civil permanent injunction.  But the parties agree, and the indictment
alleged, that it contained a Acurfew provision@
prohibiting anyone subject to the injunction from Ariding
about in a public place after 11 p.m. and before 6 a.m. of the immediately
following day.@





[2]The
statement of facts portion of Goyzueta=s appellate brief recites
numerous problematic procedural facts concerning the issuance of the initial
temporary and permanent injunctions pursuant to Texas Civil Practice and
Remedies Code section 125.065.  Goyzueta
did not, however, appeal from the temporary or permanent injunction and in his
statement of issues on appeal challenges the constitutionality of section
125.065 based only on separation of powers grounds.





[3]The
State argues that Goyzueta did not properly preserve his overbreadth challenge;
it urges that Goyzueta=s
facial overbreadth challenge to section 71.021 was only superficially and not
specifically mentioned in Goyzueta=s motion to dismiss and
points out that no as-applied overbreadth challenge to section 71.021 was made in
the trial court.  The record reflects
that Goyzueta properly preserved his facial overbreadth challenge to section
71.021 in his motion to dismiss and at the hearing on it.  Additionally, Goyzueta=s
arguments on appeal concerning the alleged unconstitutionality of section
71.021 based on the overbreadth doctrine are facial challenges.  We therefore address those arguments.  We agree with the State, however, that
Goyzueta did not raise an as-applied overbreadth challenge to section 71.021 in
the trial court and that issue is not before us.  See Tex.
R. App. P. 25.2(a)(2)(A); Sullivan v. State, 986 S.W.2d 708, 711
(Tex. App.CDallas
1999, no pet.).  





[4]Although
we hold that Goyzueta has not demonstrated that under these particular facts
the statute is unconstitutional as applied to him, we recognize that there
could be instances in which this statute is unconstitutionally vague as applied
to other individuals.  





[5]In
his brief, Goyzueta lists two instances in which apparent fellow gang members
under the temporary injunction were arrested. 
Goyzueta argues that the injunction restrictions that the gang members
were allegedly charged with violating are overbroad.  However, evidence supporting Goyzueta=s
statements that fellow VC members were arrested for violating the temporary
order is not included in the appellate record. 
Because Goyzueta did not raise an issue regarding the constitutionality
of the temporary or permanent injunction in his motion to dismiss, we hold that
he has failed to preserve this issue for our review.